UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA

                                                                DEFENDANT'S
                                                                MEMORANDUM
       -against-                                       FOR RECONSIDERATION

MOFADDAL M. MURSHED,                    1:13-CR-489 (TJM)

                        Defendant.
_____

## PURPOSE

This Memorandum is submitted on behalf of defendant Mofaddal M. Murshed in connection with the remand for further consideration by the Second Circuit Court of Appeals (*United States v. Algahaim*, 842 F.3d 796 [2d Cir. 2016]) and in compliance with this Court's Order dated March 20, 2017. It will address the Second Circuit's Opinion and why this Court should issue a non-Guidelines sentence of time served. Mr. Murshed is currently serving a 30-month term of imprisonment and, according to the Federal Bureau of Prisons website, his release date is August 11, 2017. Therefore, Mr. Murshed has less than five months remaining on his existing sentence.

## THE SECOND CIRCUIT'S OPINION

The Second Circuit found remarkable that "[t]he calculation of Murshed's adjusted offense level, driven by the monetary loss amount, increased his base offense level from six to eighteen, a three-fold increase. *United States v. Algahaim*, 842 F.3d at 800. Although the Court noted the authority of the Sentencing Commission "to construct a set of guidelines that used loss amount as the predominant determination of the adjusted offense level for monetary offenses," it concluded that the "unusualness" of this approach is a circumstance that a sentencing court is entitled to consider. *United States v. Algahaim*, 842 F.3d at 800. The Second Circuit held that

"[w]here the Commission has assigned a rather low base offense level to a crime and then increased it significantly by a loss enhancement, that combination of circumstances entitles a sentencing judge to consider a non-Guidelines sentence." *United States v. Algahaim,* 842 F.3d at 800. The Court remanded the case "to permit the sentencing judge to consider whether the significant effect of the loss enhancement, in relation to the low base offense level, should result in a non-Guidelines sentence." *United States v. Algahaim,* 842 F.3d at 800.

The Second Circuit subsequently denied the Government's petition for rehearing, indicating that "[a]lthough the sentencing judge was likely aware of his authority to impose to a nonguidelines sentence, it is not clear that he appreciated that he could do so because of a disagreement with a policy of the Sentencing Commission." (Second Circuit Order dated February 7, 2017, Case 15-2024).

## DEFENDANT'S EXISTING SENTENCE

Under the applicable Sentencing Guidelines (U.S.S.G §2B1.1, Nov. 2014), the Base Offense Level was six and, because the loss amount was more than $200,000 (i.e., $340,509.00), the Level was increased by 12 under U.S.S.G. §2B1.1(b)(1)(G). Thus, with a Criminal History Category of I, the Guidelines range of imprisonment was 27-33 months. This Court imposed a Guidelines sentence of 30 months imprisonment.

## THE COURT SHOULD IMPOSE A NON-GUIDELINES SENTENCE

Upon reconsideration, this Court should reject on policy grounds the application of the monetary loss enhancement under U.S.S.G. §2B1.1(b)(1). Specifically, it should reject the 12-level Specific Offense Characteristic increase in defendant's Base Offense Level under §2B1.1(b)(1)(G) because the widely disparate loss amounts in the categories corresponding with

each successive two-level enhancement result in an arbitrary increase of the Base Offense Level bearing no legitimate relationship to the seriousness of the underlying offense. For example, under the 2014 Guidelines in effect at the time of defendant's sentencing[1], if the loss is more than $5,000, add two levels; if more than $10,000, add two more levels; if more than $30,000, add two more levels; if more than $70,000, add two more levels; if more than $120,000, add two more levels; if more than $200,000, add two more levels; if more than $400,000, add two more levels; and if more than $1 million, add two more levels.

Under this structure, the Base Offense Level is increased a total of eight levels for the first $70,000 in loss, but then just two levels for the next $50,000 in loss, and just four levels for the next $130,000 in loss. Put another way, after the first eight-level increase for more than $70,000 in loss, it takes more than $1 million in loss to result in another eight-level increase. There is no explanation why the Sentencing Commission adds eight levels for the first $70,001 in loss, but then only eight more levels for losses exceeding $1 million.

Respectfully, the Sentencing Commission's determination to enhance the Base Offense Level by two levels for loss above $5,000, four levels for loss above $10,000, six levels for loss above $30,000, eight levels for loss above $70,0000, 10 levels for loss above $120,000 and 12 levels for loss above $200,000 is arbitrary and irrational. In the present case, defendant's Adjusted Offense Level of 18 was three times greater than his Base Offense Level of six, based solely on the loss amount exceeding $200,000. However, before the Adjusted Offense Level would be 24, or four times greater than the Base Offense Level, the loss would need to be more than $2.5 million. In other words, a similarly-situated defendant can steal more than 11 times the

---

[1] The 2016 Sentencing Guidelines §2B1.1(b)(1) were amended to increase the loss amounts corresponding to each two-level upward adjustment to the Base Offense Level. However, under either the 2014 or 2016 Guidelines, a $340,509 loss results in a 12-level increase to the Base Offense Level.

3

amount it takes to triple his Base Offense Level before his Base Offense Level is quadrupled. Furthermore, the Base Offense Level of a defendant who steals $400,001 is adjusted upward the same amount as it is for the defendant who steals $1 million dollars. U.S.S.G. §2B1.1(b)(1)(H) and (I).

The Base Offense Level doubles from 6 to 12 when the loss amount exceeds just $30,000. As in this case, it triples from 6 to 18 when the loss is more than $200,000. It does not quadruple from 6 to 24 until the loss is more than $2,500.000. This means that a defendant who steals $200,000.01 will see his Base Offense Level triple, while the same defendant who steals nearly 11 times as much ($2.5 million), will not see his Base Offense Level quadruple.

A theft of $200,000.01 with a Criminal History Category I will result in a Guidelines range of 27-33 months; while a theft of $2.5 million will result in a Guidelines range of 51-63 months. One can therefore steal nearly $2.3 million more and the Guidelines range of imprisonment does not even double. This result is inconsistent with the Sentencing Commission's determination that "ordinarily, the sentences of defendants convicted of federal offenses should reflect the nature and magnitude of the loss caused …loss serves as a measure of the seriousness of the offense and the defendant's relative culpability and is a principal factor in determining the offense level under this guideline" U.S.S.G. §2B1.1 *cmt. background.* If loss serves as the measure of the seriousness of the offense, then it is illogical for the Guidelines to increase a Base Offense Level by the same two levels for a range of loss between $5,000 and $10,000, *see* U.S.S.G. §2B1.1(b)(1)(B)and (C) (Nov. 2014), and a range of loss between $2.5 million and $7 million, *see,* U.S.S.G. §2B1.1(b)(1)(J)and (K)(Nov. 2014).

4

Another reason to reject the Guidelines in the present case is because Mr. Murshed, as proprietor of D&D Deli, did not steal or personally profit in the full loss amount of $340,509.00. While D&D Deli obtained that amount in SNAP benefits from the U.S. Department of Agriculture, in order to do so, it had to exchange amounts of cash and ineligible goods, such as cigarettes. The total loss amount does not equal the benefit received by Mr. Murshed or D&D Deli because cash and goods were provided in exchange for the SNAP benefits.

Furthermore, the culpable conduct of the SNAP beneficiaries played an indispensable role in the offense and loss amount. The $340,509.00 in SNAP benefits were already earmarked by the Department of Agriculture and issued to the beneficiaries, who willingly exchanged them at the D&D Deli for cash or cigarettes. Thus, another reason to reject the loss-driven Guidelines is the fact that the total loss amount was the due to culpable conduct of multiple parties, not just defendant.

## THE SENTENCE IMPOSED SHOULD BE TIME SERVED

Mr. Murshed has been serving his 30-month sentence of imprisonment since June 9, 2015, and is scheduled to be released from the Bureau of Prisons on August 11, 2017. After determining that a non-Guidelines sentence is appropriate, this Court should conclude that Mr. Murshed's sentence should be less than or equal to the amount of time already served. The existing sentence should be vacated and defendant submits that a non-Guidelines sentence of 20-24 months is appropriate, thereby resulting in Mr. Murshed's immediate release.

## CONCLUSION

Upon further consideration, this Court should reject the Loss Adjustment of the Fraud Guidelines given the "unusualness" of the Sentencing Commission's approach, vacate

defendant's current Guidelines sentence of 30 months, and resentence defendant to a non-Guidelines sentence of time served or less than 24 months.

Dated: March 27, 2017

                              Respectfully submitted,

                              DREYER BOYAJIAN LLP

By:   */s/ John B. Casey*
      JOHN B. CASEY
      Bar Roll #: 508187
      *Attorneys for Defendant*
        *Mofaddal M. Murshed*
      75 Columbia Street
      Albany, NY 12210
      (518) 463-7784
      jcasey@dreyerboyajian.com